### DAIRY INDUSTRIES SUPPLY ASS'N v. LA BUY.

#### No. 10873.

United States Court of Appeals Seventh Circuit.

Nov. 4, 1953.

Walter J. Cummings, Jr., H. Blair White, Chicago, Ill., for petitioner.

Henry S. Blum, Bernard G. Sang, Vincent J. Carney, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

On September 20, 1952, Maryland Baking Company and Northwest Cone Company, corporations organized under the laws of the State of Maryland and having their principal places of business in Baltimore, Maryland, and Chicago, Illinois, respectively, commenced an action in the United States District Court for the Northern District of Illinois against Dairy Industries Supply Association, hereinafter referred to as DISA, a corporation organized under the laws of the State of New York and having its principal place of business in Washington, D. C., and against its officers and directors, both in their official capacities and as individuals. The complaint alleged that the defendants combined and conspired together to bar and prevent Maryland Baking Company from exhibiting its

wares and to prevent its wholly-owned subsidiary, Northwest Cone Company, from furnishing its products to the exhibitors at the National Dairy Industries Exposition which DISA held on Navy Pier in Chicago, commencing September 22, 1952. The complaint alleged that this action by the defendants was in violation of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 1, and that plaintiffs brought this action under the Clayton Anti-Trust Act, § 4, 38 Stat. 731, 15 U.S.C.A. § 15. The complaint asked that the defendants be enjoined from preventing the plaintiff Maryland Baking Company from exhibiting its wares at the Chicago exposition and from preventing Northwest Cone Company from furnishing its products to the exhibitors at said exposition and also asked for a judgment for treble damages for the injuries sustained by plaintiffs by reason of the alleged unlawful acts of the defendants in excluding the two plaintiffs from participating in said exposition.

On October 30, 1952, DISA and the individual defendants who had been served with summons in the action filed a motion to transfer the action to the United States District Court for the District of Columbia pursuant to 28 U.S. C. § 1404(a). On the same date DISA filed its motion to quash the service of summons made upon it in Chicago during the convention and the alias summons served upon it thereafter in Washington, D. C. In this latter motion DISA also moved to dismiss the action for want of venue in the Northern District of Illinois. The defendants filed four affidavits made by Roberts Everett, executive vice president of the corporate defendant, in support of these motions. The plaintiffs opposed these motions and filed, in opposition to the motions, the affidavit of Henry Shapiro who was the president of Maryland Baking Company and the secretary of Northwest Cone Company.

After considering the pleadings, motions, affidavits, arguments and briefs of the parties, the District Court was of the opinion that the corporate defendant,

DISA, "was doing business here to such an extent and in such manner that actual presence was established and it was 'found' here at the time of the service of summons on September 24, 1952." The District Court also found that the defendants had failed to sustain their burden to prove that for the convenience of the parties and witnesses, and in the interest of justice, the District Court should transfer the action to the District of Columbia, pursuant to 28 U.S.C. § 1404(a).

The District Court thereupon entered an order overruling the defendants' motion to quash the service of summons and denying their motion to transfer the action to the District Court for the District of Columbia.

The defendants then filed in this court a petition for a writ of mandamus directing the District Court to vacate and set aside its order denying the petition to transfer and directing the transfer of the action or, in the alternative, directing that the action be dismissed for want of venue in the Northern District of Illinois.

Section 12 of the Clayton Act, 15 U.S. C.A. § 22, provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Thus, as the Supreme Court said in United States v. Scophony Corporation, 333 U.S. 795, 802, 68 S.Ct. 855, 859, 92 L.Ed. 1091:

"Section 12 of the Clayton Act has two functions, first, to fix the venue for antitrust suits against corporations; second, to determine where process in such suits may be served. Venue may he had 'not only in the judicial district whereof it is an inhabitant, but also in any dis-

trict wherein it may be found *or transacts business.'* And all process may be served 'in the district of which it is an inhabitant, or wherever it may be found.' (Emphasis added.)"

The court also pointed out that § 12 of the Clayton Act was an enlargement over similar prior statutes which only provided for such actions in districts where the corporation "resides or is found." 28 Stat. 570, § 77 and 26 Stat. 210, § 7.

In the Scophony case the court said, 333 U.S. at page 807, 68 S.Ct. at page 862, that under § 12 of the Clayton Act, "the practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue." Under § 12, as so interpreted, we think the corporate defendant in the instant case was transacting business in the Northern District of Illinois when the action against it was commenced.

DISA is described by Roberts Everett, its executive vice president as "a trade association comprising some four hundred members—persons, firms and corporations—which originate, make or distribute the essential manufacturing and marketing machinery, equipment, materials, supplies and ingredients or supply basic services for milk processing and dairy product manufacturing industries of the United States and Canada." Mr. Everett listed fourteen different activities and services in which DISA is engaged, including "staging biannual Dairy Industries Exposition," such as the one staged in Chicago and in connection with which the present controversy arose.

Henry Shapiro, the vice president of Maryland Baking Company and secretary of Northwest Cone Company, in the affidavit which he filed in opposition to the motions of the defendants, said that substantially every important firm in the United States engaged in the manufacture of, or dealing in equipment or supplies for manufacturers of, dairy products, is a member of DISA; that the

majority of the members consider that the most important work of DISA is the holding of the biannual Dairy Industries Exposition; that these expositions appeal to prospective purchasers of equipment and that a large proportion of the persons attending these expositions are prospective customers for the equipment exhibited by the members of the organization; that for the Chicago exposition DISA leased from the City of Chicago 300,805 square feet of space in the north and south exhibition halls of Navy Pier for a term extending from September 2, 1952 to October 6, 1952, inclusive; that under the terms of the lease DISA was to expend the money necessary for the installation on Navy Pier of a three inch supply of water and a two inch secondary distribution thereof; and that DISA was to have credit on the rental it was to pay for the cost of this installation.

In his affidavit Mr. Shapiro quoted the following statement of R. D. Britton, the chairman of the exposition committee, which had been sent out by the committee to the members of DISA:

> "In renting the Navy Pier, we are renting a bare hall, literally speaking, as a great many of the facilities that went along with the Atlantic City Convention Hall are lacking at the Navy Pier. It is going to be the responsibility of our staff, of our Committee members and of all of you folks who are members of DISA, to help provide these facilities. DISA is preparing to invest from $30,000 to $40,000.00 more than it had done in recent Show years to adapt the Pier's features to your Dairy Industries Exposition use."

Mr. Shapiro, in his affidavit, further said that on August 18, 1952, DISA advised its membership that a part of its staff would open a Dairy Industries Exposition Management Office on Navy Pier and that before the show opened on September 2nd, "almost the whole staff of DISA would be located at the Navy Pier"; that the members were instructed that after September 5, 1952, they should address all mail, with certain minor exceptions, to DISA, Navy Pier, Chicago; that prior to the holding of the Chicago Exposition, DISA held its 33rd annual corporate meeting in Chicago at the Congress Hotel; and that in connection with this annual meeting the members were taken by chartered buses for a "Preview of Navy Pier Tour" and the members drew lots to determine the location of their exhibits at the Navy Pier exposition.

DISA attempts to minimize the effect of these statements of its officers concerning the Chicago exposition which it published and sent to its members prior to the exposition. DISA now says that the $30,000 to $40,000 expenditures which it said would be expended for installations to make Navy Pier a suitable place for the exposition were "merely predicted" and "represented simply a promotional effort by DISA to encourage the participation of its member companies as exhibitors in the exposition." In its reply brief in this court these statements, which DISA now says were exaggerated, are characterized as "exuberant advertising, rather than a factual description."

■■■ Nevertheless, in spite of DISA's present explanations of its earlier statements, we think that the District Court could properly consider these pre-exhibition statements as evidence tending to show the importance of this biannual exposition and as tending to show that during the month of September 1952, at the time this action was filed by the plaintiff and summons was served on DISA, practically the entire business of DISA was being transacted in Chicago and that almost all of its staff were there present and engaged in conducting such business. We think, therefore, that the District Court also correctly determined that DISA was "found" there at the time of the summons on it in Chicago and that such service was, therefore, valid.

■■■ Title 28 U.S.C. § 1404(a) names only three factors which a District Court Judge is to consider in determining his

action on a motion for transfer under this section, namely, the convenience of the parties, the convenience of the witnesses and the interest of justice. In considering these three factors the court should, of course, bear in mind that in filing an action the plaintiff is permitted to choose any proper forum and that the plaintiff's choice should not lightly be set aside. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055.

In acting on such a motion the District Judge has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404 (a) and he may not properly be governed in his decision by any other factor or factors.

In the memorandum opinion of the District Court in the instant case we find the following statement in reference to the defendants' motion to transfer the action to the District of Columbia, pursuant to 28 U.S.C. § 1404(a):

"The choice of venue is to be determined by a preponderance of the facts and the burden is on the moving party. *Before the court is warranted in depriving plaintiff of its right to proceed in a proper forum it must appear that continuance of the action in this forum would be oppressive, harassing and vexatious to the defendant.* From the affidavits and counter-affidavits and briefs filed in connection with this motion, the court is of the opinion that since the files and witnesses for the plaintiffs are in this district it would be as inconvenient for the plaintiff to proceed with this cause in the District of Columbia as it would be for the defendant to defend the action in this district. *Balancing the relative inconvenience of the parties and the fact that there is no indication the filing of the suit here was vexatious or harassing to the defendant, the court is of the opinion the motion to transfer the suit*

*to the District Court of Columbia should be denied.*" (Our emphasis.)

From this language it seems clear that the District Judge in the instant case considered as necessary to an order to transfer tests which are not required by § 1404(a). The facts in such a case might be such as to clearly indicate that considering the convenience of the parties and witnesses and in the interest of justice an action should be transferred without the record disclosing any indication that the prosecution of the action in the forum where filed would be "oppressive, harassing or vexatious" to the defendant and without any indication that the plaintiff, by its choice of forum had intended to oppress, harass or vex the defendant.

That part of the judgment below denying the motion to dismiss or transfer for want of venue is Affirmed. That part of the judgment denying a transfer under Title 28 U.S.C. § 1404(a) is Reversed, and the cause is remanded with instructions to the District Court to reconsider the motion and to redetermine its action thereon on the basis of the proper factors to be considered as indicated above in this opinion.