CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Petitioner,

v.

Honorable Michael L. IGOE, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, Respondent.

No. 11247.

United States Court of Appeals, Seventh Circuit.

Feb. 16, 1955.

O. L. Houts, Chicago, Ill., for petitioner.

James A. Dooley, Chicago, Ill., for respondent.

Before DUFFY, Chief Judge, and MAJOR, FINNEGAN, LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

This is a petition for a Writ of Mandamus seeking an order directing the respondent to transfer from the United States District Court for the Northern District of Illinois, Eastern Division, to

the District Court for the Southern District of Iowa, pursuant to 28 U.S.C.A. § 1404(a), the case entitled "Claudine M. Mikesell, Administrator of the Estate of Charles Delbert Mikesell, Deceased, plaintiff, v. Chicago, Rock Island and Pacific Railroad Company, defendant, Civil Action No. 52 C 2124."

This proceeding is here for the second time. In the previous proceeding the respondent insisted that this Court did not have the power to entertain a petition for mandamus in a case of this nature. We held, Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 212 F.2d 378, 382, that mandamus would lie and after citing various authorities, including Dairy Industries Supply Ass'n v. La Buy, 7 Cir., 207 F.2d 554 we said: "We adhere to the Dairy Industries decision and remand the cause to the District Court with directions to vacate the order denying the transfer and to reconsider petitioner's motion in the light of the views expressed herein." [212 F.2d 382.] After the remand the District Court entered an order again denying the petition to transfer, and filed a memorandum in which the District Judge stated: " * * * I have reached the conclusion that it would not be for the convenience of the parties and the witnesses, nor in the interests of justice to transfer this case to either of the Iowa Districts requested in the petition of the defendant."

On September 14, 1951, Charles D. Mikesell and Claudine Mikesell, husband and wife, were residents of Des Moines, Iowa. On that date Charles Mikesell was driving an automobile in the village of Avoca, Iowa, and in passing over the tracks of the Rock Island Railroad, was struck by a train operated by the Railroad and was killed. Avoca is located within the Western Division of the Southern District of Iowa. The District Court of Polk County, Iowa, issued letters of administration to Claudine Mikesell and on September 13, 1952, in her capacity as administratrix, she commenced an action against said Railroad in the Superior Court of Cook County, Illinois, claiming damages for wrongful death.

The Railroad, on the grounds of diversity of citizenship, caused the Mikesell case to be removed from the Superior Court of Cook County to the United States District Court for the Northern District of Illinois. Thereafter, the Railroad filed a motion under 28 U.S.C.A. § 1404(a) [1] to transfer the cause to the United States District Court for the Southern District of Iowa for trial in either its Central Division sitting at Des Moines, or its Western Division sitting at Council Bluffs.

It is without dispute that on and prior to September 14, 1951, the date of the death of Charles Mikesell, he and his wife were residents of Des Moines, Iowa; that letters of administration were issued to plaintiff by the District Court of Polk County, Iowa; and plaintiff continued to reside in Des Moines and was living there on the date when she commenced suit against the Railroad in the Superior Court of Cook County, Illinois. Further, it is averred, in the affidavit filed upon behalf of the Railroad, that in order to defend plaintiff's action, petitioner will be required to call two non-employee witnesses residing at Des Moines, six non-employee witnesses residing at Avoca and five employee witnesses residing at Des Moines and Avoca; that the testimony of said non-employee witnesses can be obtained only by subpoena and that the legal process of the United States District Court for the Northern District of Illinois does not extend to any of the localities where such witnesses reside. It was also shown that Des Moines is 358 miles from Chicago; that Avoca is 459 miles from Chicago, but that Avoca is 33 miles from Council Bluffs and 104 miles from Des Moines; that all of the witnesses petitioner expects to call in its defense are within the range of legal process which can be issued by the Unit-

1. "§ 1404(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

ed States District Court for the Southern District of Iowa. Petitioner's affidavit also asserted that it would be impossible for it to properly present its defense by depositions as it could not, in advance, anticipate evidence which may be offered by the plaintiff.

Plaintiff opposed petitioner's motion to transfer and filed an affidavit which disclosed that on May 2, 1953 she married one M. L. Davis and since June, 1953, she and Davis have resided in Lombard, Illinois, in a home which they have purchased and that she now considers Lombard as her permanent residence.

Plaintiff's counsel filed an affidavit showing that petitioner's main offices are in Chicago, Illinois; that the train service between Avoca and Des Moines is poor, the trip consuming $2\frac{1}{4}$ hours, while the train service between Des Moines and Chicago was much more frequent, the trip taking about 6 hours. The affidavit also stated that plaintiff had hired an attorney residing in Chicago, Illinois, and that if the case were tried in Iowa that plaintiff would be put to the expense of hiring an additional attorney.

When the petition for transfer was first presented to the District Judge he denied the motion " * * * on the general proposition that the place where this accident occurred is about as close to Chicago as to Des Moines where you want to have the case tried, and this case was started in the State Court and you folks transferred it over to the Federal Building evidently for the purpose of having a trial, and as soon as it got here the only trial you wanted was to ship it out to Iowa, I don't think § 1404(a) was ever established or ever enacted for that reason * * *." In our previous opinion we pointed out that the reasons given by the District Judge for denying the petition were not valid, and we stated "The governing tests are expressly stated in the Act, and a leading mandamus case points up the correct guides to their application to a particular fact situation, which include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of un-

willing, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, (if necessary); and all other practical problems that make trial of a case easy, expeditious and inexpensive * * *. The Court will weigh relative advantages and obstacles to fair trial. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 [67 S.Ct. 839, 91 L.Ed. 1055].' " We then remanded this case with directions to vacate the order denying the transfer and to reconsider petitioner's motion in the light of the views that we expressed in our opinion

Plaintiff invokes the doctrine of *res judicata* based on the statement in our previous opinion herein, "Ultimate decision on that motion is within the province of the District Court, and we cannot, as petitioner would have us do, usurp its function and decide the question in this court." All we intended to say was that the District Court must, initially, make the decision by applying the statutory tests laid down in § 1404 (a), viz., " * * * convenience of parties and witnesses, in the interest of justice * * *." We thought we clearly delineated the scope of our decision when we stated: "However, this opinion deals with the existence of power only, not with the permissible limitations on its exercise." It is clear that the doctrine of *res judicata* has no application. Furthermore, we feel there is no inconsistency between this opinion and our previous opinion in this case.

■ In considering the three factors prescribed by the statute, the District Court should bear in mind that in filing an action the plaintiff is permitted to choose any proper forum and that the plaintiff's choice of forum should not be lightly set aside. In acting on such motion the District Judge has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decision by any other factor or consideration. Dairy Industries Supply Ass'n v. La Buy, supra, 207 F.2d at pages 557–558.

Whether the plaintiff followed the litigation or whether, by an unusual coincidence, she moved to the Northern District of Illinois because of her second marriage, is, as we see it, not of great importance. Although plaintiff was not a witness to the collision at Avoca, Iowa, she, undoubtedly, might be called to testify at the trial as to undisputed matters, and we think, under the circumstances of this case, if the first test alone were to be considered, viz., "convenience of the parties", that the trial judge acted within his discretion in refusing to order the transfer. But the statute requires the application of two additional tests.

As to the second test "convenience of witnesses" it is self-evident that the convenience of both plaintiff's and defendant's witnesses would be served by a trial of the cause in the Southern District of Iowa. A number of witnesses reside at Avoca which is 459 miles from Chicago but only 33 miles from Council Bluffs and 104 miles from Des Moines, the two cities where the trial might be held. The other witnesses apparently all reside at Des Moines. Plaintiff's counsel argues that train service between Avoca and Des Moines is poor, but we assume the highways in that area are suitable for automobile travel, and that Iowa, like other states, has the benefit of extensive bus service. There is nothing in this record to indicate the convenience of witnesses will be served by a trial in Chicago. There is no factual basis in this record for the respondent's conclusion to the contrary.

■■ The third test under the statute is "in the interest of justice". The phrase connotes conditions which are in furtherance of the administration of justice. It has been held that the phrase should be given paramount consideration. Greve v. Gibraltar Enterprises, Inc., D.C., 85 F.Supp. 410, 413. Both the interest of the parties to the lawsuit as well as society in general should be considered. United States v. National City Lines, Inc., D.C., 7 F.R.D. 393, 397, 402. In the interest of justice there should be considered the relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred.

A number of courts have given consideration to the congested state of their calendars in considering a motion to transfer. Rhoton v. Interstate R. Co., D.C., 123 F.Supp. 34; Glasfloss Corporation v. Owens-Corning Fiberglas Corporation, D.C., 90 F.Supp. 967; United States v. E. I. Du Pont DeNemours & Co., D.C., 83 F.Supp. 233; Hansen v. Nash-Finch Co., D.C., 89 F.Supp. 108; Healy v. New York, New Haven & Hartford R. Co., D.C., 89 F.Supp. 614.

The calendar for the District Court of the Northern District of Illinois is congested.[2] There is no apparent reason why this case could not be brought to trial promptly in the Southern District of Iowa.

■ Possibly the real motive for plaintiff's vigorous opposition to the transfer of this case is the hope and expectation that a verdict for a larger sum would be

2. The annual report of the Director of the Administrative Office of the U. S. Courts issued September, 1954 states: (A–27) *"The Northern District of Illinois*—This large metropolitan district with 8 judges succeeded in reducing the number of pending civil cases from 3170 to 2497, but the reduction was almost entirely in United States cases. The private caseload per judge both of cases filed and cases pending is far heavier than average and the median interval from filing to disposition was 15.1 months in 1954 as compared with 14.8 months in 1953 and over 15.5 months for each of the three previous years. Although the court regularly disposes of a considerably larger number of cases per judge than the national average, a substantial reduction in the number of private cases is necessary to insure prompt disposition of civil business. Almost 80 percent of the cases filed in 1954 were private cases compared with the national average of 66 percent."

returned in Chicago than in the Southern District of Iowa. Also, the Railroad might hope for a lower verdict in Iowa. Such results might well obtain, but we cannot consider those speculative factors as reasons either for or against a transfer, nor does § 1404(a) provide that the convenience of counsel is a factor to be considered. United States v. Scott & Williams, Inc., D.C., 88 F.Supp. 531, 535; Henderson v. American Airlines, Inc., D.C., 91 F.Supp. 191, 193.

We agree with the statement of the court in Josephson v. McGuire, D.C., 121 F.Supp. 83, 84: "A large measure of deference is due to the plaintiff's freedom to select his own forum. Yet this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff * * * ." In this case there is no controverted question which depends on any event occurring in the Northern District of Illinois. Both parties must rely upon evidence of events entirely removed from that District. B. Heller & Co. v. Perry, 7 Cir., 201 F.2d 525, 527.

The writer of this opinion feels confident that had he been sitting in the District Court when the motion for transfer was made, an order for transfer would have been entered without hesitation. But what he or any other judge might have done in the circumstances is not the test we must apply in deciding this case. To warrant action by us, there must be something more than an erroneous decision. Our problem is, was the refusal by the District Judge to order the transfer, an abuse of discretion? B. Heller & Co. v. Perry, 7 Cir., 201 F.2d 525, 527; Dairy Industries Supply Ass'n v. La Buy, 7 Cir., 207 F.2d 554, 558; Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624. Was respondent's denial of the transfer "so 'clearly erroneous' as to amount to an abuse of his discretion?" General Portland Cement Co. v. Perry, 7 Cir., 204 F.2d 316, 319.

The only possible factor to support the refusal to transfer is that the plaintiff chose a state court in Cook County, Illinois, as a forum, and that about nine months after she commenced such action, she moved from the Southern District of Iowa to the Northern District of Illinois. We give little weight to the claim that plaintiff will be required to hire an Iowa attorney if the transfer is ordered.[3]

Factors under the statute which demonstrate that a transfer should be made are: convenience of witnesses of both plaintiff and defendant; the ease of access to sources of proof; the availability of compulsory process to compel the attendance of unwilling witnesses; the smaller amount of expense required for willing witnesses; the availability of a view of the premises; the congestion of the District Court calendar in the Northern District of Illinois, Eastern Division; that no controverted issue of fact depends upon any event that occurred in the Northern District of Illinois; and the burden of a jury trial should not be imposed upon the Northern District of Illinois, an area which has no relation to the litigation.[4]

Another factor to be considered is plaintiff acts in a representative capacity and was appointed by an Iowa State Court. Authorization of that Court would be required in order for plaintiff to make a settlement, and plaintiff must account to that Court for any sums received by settlement or litigation, and distribution of any such sums would be

---

3. If plaintiff signed a contingent fee contract as is so often done in wrongful death cases, it is probable that any such expense would be an obligation of plaintiff's attorney.

4. As was well stated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055, "Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."

under the jurisdiction of the Iowa State Court.

■ One additional point raised by the attorney for respondent should be noted. The claim is made that the petition for mandamus is insufficient because the names of the witnesses were not stated. The decision of this Court in General Portland Cement Co. v. Perry, 204 F.2d 316 is cited. No request was made for the production of the names of defendant's witnesses. As far as this record shows all witnesses bearing on the subject of defendant's alleged liability reside in the Southern District of Iowa. In any event, the point was not raised in the Court below. Such objection cannot be raised here for the first time. Hopkins v. Waco Products, Inc., 7 Cir., 205 F.2d 221, 224; Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F.2d 737, 744; Apex Smelting Co. v. Burns, 7 Cir., 175 F.2d 978, 982; McComb v. Goldblatt Bros., Inc., 7 Cir., 166 F.2d 387, 389–390.

■ The balance of convenience of the parties is so overwhelmingly in favor of the defendant that we hold the denial by respondent of the motion to transfer this case to the Southern District of Iowa was so clearly erroneous that it amounted to an abuse of discretion.

Let a Writ of Mandamus issue directing the Respondent 1) to vacate and set aside the order entered July 7, 1954; and 2) to enter an order transferring this cause for trial to the Southern District of Iowa, in either the Central or Western divisions thereof.

It Is So Ordered.

FINNEGAN, Circuit Judge (dissenting).

An *en banc* hearing as one of three oral arguments and two briefings, on each side, is quite enough of this case. Several serious matters of policy and principle, however, concerning mandamus, impel me to expand this dissent and express my views on some broader aspects of the majority opinion. This entire episode illustrates problems following in the wake of generously encouraged repetitive invocations of mandamus.

I would have allowed the respondent Judge's motion to dismiss the Railroad's second petition for a writ of mandamus, and rested my determination on the reasons expressed in this dissent.

A major point of my divergence, from the majority opinion, is stressed by tracing, chronologically, the various stages through which this matter passed after suit was filed, September 13, 1952, in the Superior Court of Cook County, Illinois. Petitioner here, defendant-Railroad, removed the case from that State court, October 6, 1952, to the district court below. Four days later petitioner invoked 28 U.S.C.A. § 1404(a) and moved for a transfer to one of two districts in Iowa, the Eighth Circuit. Objections to petitioner's motion were interposed, June 12, 1953, on behalf of the plaintiff-widow-administratrix. It was respondent's order, entered eight days later, which stimulated the Railroad's first petition for a writ of mandamus to compel the transfer, and that resulted in an opinion reported as Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 1954, 212 F.2d 378.

On remand ordered April 20, 1954, the basic factual showing remained unaltered, save in one respect hereinafter mentioned, and remarkably similar to that outlined in Judge Lindley's opinion, 212 F.2d 378 and now narrated in the Chief Judge's opinion. Confronted with the same papers originally tendered him by the Railroad and plaintiff's objections, by then implemented with her affidavit (filed June 24, 1954) concerning change of residence to Illinois sometime in May-June, 1953, respondent again denied this transfer.

At this juncture, and parenthetically at least, I recall marginal note 2 of Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 1954, 212 F.2d 378, 379, viz.:

"Respondent's answer to the petition avers that plaintiff, prior to June 30, 1953, the date petitioner's motion was denied, had moved to, and was a resident of the Northern

District of Illinois, and on the basis of this averment denies the allegation of the petition that all witnesses to be called by either party are residents of the Southern District of Iowa. It was conceded on oral argument that plaintiff was not a witness to the accident which caused the death of her decedent. On November 30, 1953, over petitioner's objection, respondent granted a motion that a statement as to this change of residence be certified to this court. Inasmuch as that fact was not before respondent when he denied petitioner's motion to transfer, it is not properly before us now and we do not consider it. General Portland Cement Co. v. Perry, 7 Cir., 204 F.2d 316."

Judge Igoe, as part of his second denial, filed the following memorandum:

"In compliance with the mandate of the Circuit Court of Appeals in Chicago, Rock Island and Pacific Railroad Company v. Igoe, 7 Cir., 212 F.2d 378, the order heretofore entered in this matter denying the transfer of the above cause has been vacated and further consideration has been given to the petition for transfer heretofore filed herein, as well as to all of the pleadings in this matter, including affidavits filed by both parties thereto since the cause has been remanded.

"Upon consideration of all of the papers now on file in this case, I have reached the conclusion that it would not be for the convenience of the parties and witnesses, nor in the interest of justice to transfer this case to either of the Iowa Districts requested in the petition of the defendant."

I also think the District Judge is entitled to have repeated the following representation made in his answer, and behalf, by his counsel:

"Respondent further states that he has faithfully discharged the discretion which the orderly administration of justice requires."

Now, the majority devotes part of their opinion to what "we intended to say" and "thought we clearly delineated * * *" in Chicago, R. I. & P. R. Co. v. Igoe, 7 Cir., 1954, 212 F.2d 378. Yet I find it difficult to so easily dilute the impact of Judge Lindley's final passage:

"Ultimate decision on that motion is within the province of the District Court, and *we cannot, as petitioner would have us do, usurp its function and decide the question in this court.*" Ibid, 382; italics added.

The Railroad's first petition for mandamus, then pending before the panel which approved that specific closing paragraph, sought precisely the same relief now granted, after petitioner's persistent efforts. Having announced we had "power," the writ was neither expressly granted nor denied. Facing up to realities, it seems to me the trial judge was simply given a second chance. Since he made the wrong choice on the second round, which incidently was the same ruling precipitating remand, the writ issues.

Discretion, vested in the District Judge is the nub of this matter. Secret motives of either set of litigants, or their counsel are irrelevant—the trial judge stands alone. For that reason I disclaim the majority's statement, *i. e.,* " * * * we feel there is no inconsistency between this opinion and our previous opinion in this case." It is hardly sound justification for currently usurping the District Judge's function and deciding the question in this court, to say we were, at first, concerned solely with enunciating the existence of our "power." Regardless of how it is articulated, I think we now usurp, where once we refrained. Either the remand order gave the District Judge a Hobson's choice, or it left him with discretion. Nor can the inconsistency be dispelled by simply pointing up a sentence lurking in the first opinion, 212 F.2d 378, 381, viz.: "However, this opinion deals with the existence of power only, not with the permissible limitations on its exercise." For I find it difficult to conclude that the following portion of

Judge Lindley's opinion is merely dictum, if "power" was the sole decision point:

"We adhere to the Dairy Industries decision and remand the cause to the District Court with directions to vacate the order denying the transfer and *to reconsider petitioner's motion in the light of the views expressed herein.*" 212 F.2d 378, 382; italics added.

The "views" concerned § 1404(a); and the District Judge reconsidered. Nowhere in its opinion has the majority shown why the writ did not issue the first time. I hardly think remand was ordered as a veiled threat predicated upon an announcement that we had power to issue the writ.

I think we should come to grips with the core issue—*abuse* of discretion, its existence or non-existence. If we are substituting our discretion for that of respondent we ought to say so and be done with it. We have no business, as I view it, balancing conveniences of the parties, and speculating upon their motivations.

Just how "society in general" merits consideration on a motion to transfer escapes me. That the words found in § 1404(a) " 'in the interest of justice', must be given paramount consideration" is an unsupported view of a district court speaking in Greve v. Gibraltar Enterprises, Inc., D.C.D.N.M.1949, 85 F.Supp. 410, 413. But if that epitomizes § 1404 (a) then certainly it is a sweeping and elastic criteria. Respondent had a broad range of discretion under that prong of § 1404(a), even in light of the majority's reasoning.

What chiefly emerges from the repertory of ideas expressed in the majority's opinion is not a demonstration of discretion abused below, but rather a sliding scale of judgment values between reviewing tribunal and trial court.

My additional views coincide with those expressed by Judge Goodrich, speaking for a unanimous court in All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, 1011–1012:

"The second danger which threatens the usefulness of Section 1404 (a) comes from the appellate courts. It is settled in this Circuit and elsewhere that an order either making a transfer or refusing a transfer is not appealable. Now the effort is being made both in this court and elsewhere to substitute for appeal a review by mandamus whenever the losing party on a motion to transfer wants an advance review of the ruling on this point.

"We think that this practice will defeat the object of the statute. Instead of making the business of the courts easier, quicker and less expensive, we now have the merits of the litigation postponed while appellate courts review the question where a case may be tried.

"Every litigant against whom the transfer issue is decided naturally thinks the judge was wrong. It is likely that in some cases an appellate court would think so, too. But the risk of a party being injured either by the granting or refusal of a transfer order is, we think, much less than the certainty of harm through delay and additional expense if these orders are to be subjected to interlocutory review by mandamus.

"We do not propose to grant such review where the judge in the district court has considered the interests stipulated in the statute and decided thereon. * * *"

Our mandamus power is not a muscle which requires exercise to maintain its vitality. More slides into abdication, today, than a mere order of transfer finally wrested from our court.