UNITED STATES of America,
Plaintiff,

v.

AMERICAN LINEN SUPPLY COM-
PANY, Frank G. Steiner, and Jonas
H. Mayer, Defendants.

UNITED STATES of America,
Plaintiff,

v.

CROWN ZELLERBACH CORPORA-
TION, American Linen Supply Com-
pany, Frank G. Steiner, Jonas H. Mayer,
and Wayne Brown, Defendants.

Nos. 55–C–110, 55–C–115.

United States District Court
E. D. Wisconsin.

Sept. 8, 1955.

Earl A. Jinkinson, Special Asst. to Atty. Gen., for plaintiff.

Leo F. Tierney, Roger W. Barrett & Charles L. Stewart, Jr., Chicago, Ill., Malcolm K. Whyte and Martin Browning, Milwaukee, Wis., for American Linen, Steiner & Mayer.

Philip S. Ehrlich, Philip S. Ehrlich, Jr., San Francisco, Cal., Louis Quarles, Charles S. Quarles, Milwaukee, Wis., for Crown Zellerbach and Brown.

GRUBB, District Judge.

Case No. 55–C–110 is an action by the Government charging alleged nationwide violations by the defendants and co-conspirators to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S. C.A. § 1, and Section 3 of the Clayton Act, 15 U.S.C.A. § 14. It alleges that the corporate defendant is a Nevada corporation having its principal offices in Chicago, Illinois. The defendant Steiner is president and the defendant Mayer is vice-president of the corporate defendant. The violations are alleged to have been committed by officers, agents and employees of the corporate defendant including the individual defendants. The alleged violations concern towel cabinets of various kinds and alleged agreements concerning these devices and towels of various kinds. The corporate defendant is alleged to have purchased its total requirements of paper towels from Crown Zellerbach Corporation, the complaint setting forth in detail the alleged violations of the Acts.

Case No. 55–C–115 includes as defendants Crown Zellerbach Corporation, a Nevada corporation, with its principal offices in San Francisco, and Wayne Brown, sales manager and assistant vice-president of the Eastern Division of Crown Zellerbach. It sets forth that patented devices are leased and charges various violations of the Sherman Act. It alleges that defendant, American Linen Supply Company, transacts business and is found within the Eastern District of Wisconsin. In this case the allegation is that the conspiracy and violations have taken place throughout the United States east of the Mississippi River.

These cases are before the Court on the motion of the defendants in each action that the respective actions and proceedings be transferred to the United States District Court for the Northern District of Illinois, Eastern Division, on the principal of *forum non conveniens.* The parties are relying upon Title 28 U.S.C.A. § 1404. In view of the fact that the actions are so closely related and that the motions were presented together, this decision covers the motions in both actions.

In Case No. 55–C–110, defendants have presented the affidavit of Jonas H. Mayer, vice-president of American Linen, which sets forth that that defendant's manufacturing, selling and handling of licensing patents are done through the Chicago office; that personnel with knowledge relative to these activities are in the Chicago area, absence from which of necessary witnesses and key personnel would seriously interrupt and impair the business of that defendant; that the selling and distribution of towels to jobbers are handled at Chicago; that substantially all personnel having knowledge of the transactions referred to in the complaint are officers and supervisors in the Chicago office whose absence from Chicago for litigation would seriously interrupt and impair business of the defendant; that if the trial is had in Chicago, such persons can continue to perform most of their duties; that branch office personnel who will be necessary as witnesses may perform many duties in the Chicago office during the trial if it be had in Chicago where records, desk space, stenographers and communications with their regular offices are available; that Mayer himself is deaf and to testify it is necessary that questions be repeated by his wife whose lips he reads; that defendant's counsel who handled the Grand Jury case and who are familiar with the facts and who will be needed in the defense are in Chicago; that it will substantially increase cost to that defendant if the cases are tried in Milwaukee; that all records of that defendant are in Chicago;

that the operating records are more easily produced in Chicago with less danger of their being lost or mislaid and of unnecessarily disrupting defendant's business.

There is also the affidavit of Leo F. Tierney, defendant's attorney, in which it is set forth that the documents which were presented to the Grand Jury in Milwaukee (the Grand Jury did not hand down an indictment) while within the legal custody of this Court, are physically in Chicago. Mr. Tierney also sets forth that the annual report for 1954 shows a median interval between filing and disposition of civil cases in all District Courts to be 13.5 months; that in the Northern District of Illinois it is 15.1 months. (For fiscal year 1954 the annual report of the Director of the Administrative Office of the United States Courts shows that the median interval of time between the filing date and the date of disposition for cases which were tried was 23.5 months in the Eastern District of Wisconsin.)

As opposed to these affidavits, there is the affidavit of Earl A. Jinkinson, Special Assistant to the Attorney General and Chief of the Mid-West office of the Anti-Trust Division of the Department of Justice with offices in Chicago, Illinois. Mr. Jinkinson opposes the transfer because of the pendency in this Court of the case of Krantz v. American Linen. An examination of the files of this Court shows that the preliminary investigation was conducted here, Grand Jury hearings were conducted here, the assertion that this forum meets the convenience of the greatest number of witnesses (there is no listing of any witnesses by either name, numbers or location), that corporate defendant does substantial business in Wisconsin, that defendant's offices are *near* this district and personnel have convenient transportation. He sets forth that in the proceedings before the Grand Jury in Milwaukee, 21 witnesses were from Wisconsin, 10 from Illinois and 60 from all over the country. There is nothing in his affidavit setting forth the number or location of witnesses

**24**

which the Government intends to call on the trial of these actions. He goes into detail as to airline and train schedules for traveling to Milwaukee. He sets forth that there are frequent trains between Chicago and Milwaukee with some schedules showing an 85-minute run. He asserts that the two cases are not related although an examination of the pleadings would lead the Court to the conclusion that considerable evidence would be material and relevant in many respects in both cases.

Mr. Tierney filed a counter-affidavit in which he goes into detail with reference to the anti-trust cases pending in the Northern District of Illinois. From this counter-affidavit, which is not controverted, it appears that these cases have not been delayed because of any calendar congestion but that courts have been available before the Government was prepared to try them. His counter-affidavit also indicates that there are four judges in the Northern District of Illinois to whom no anti-trust cases have been assigned.

As to Case No. 55–C–115, there is an affidavit by Philip Erlich, Jr., that Crown Zellerbach personnel from New York and San Francisco often perform duties for that company in Chicago where there is a sales office; that they have no offices in Milwaukee; that they have no occasion to stop in Milwaukee. This affidavit is in addition to the other affidavits which are almost identical to the affidavits filed in Case No. 55–C–110.

Section 1404(a), 28 U.S.C.A., provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is no question but what these actions might have been brought in the Northern District of Illinois. This provision was enacted in the Code in 1948 following the decision of the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. In that case the court passes on the principle of *forum non conveniens*. It was decided in March of 1947. The dissenting opinion urges that remedies for the situation as it then existed were matters for the consideration of Congress rather than the courts. The enactment of Section 1404(a) followed shortly after the decision in that case, and the Congress no doubt had before it the suggestions contained in the dissenting opinion.

The Circuit Court of Appeals for the 7th Circuit states in Dairy Industries Supply Ass'n v. La Buy, 1953, 207 F.2d 554, 557, as follows:

"Title 28 U.S.C. § 1404(a) names only three factors which a District Court Judge is to consider in determining his action on a motion for transfer under this section, namely, the convenience of the parties, the convenience of the witnesses and the interest of justice."

It further states that the District Judge

"is limited in his consideration to the three factors specifically mentioned in § 1404(a) and he may not properly be governed in his decision by any other factor or factors."

The first test under the statute and under that decision is the convenience of parties. In United States v. E. I. Du Pont De Nemours & Co., D.C., 87 F. Supp. 962, the Mid-West Department (of the Anti-Trust Division) opposed the transfer of an anti-trust case from Chicago to Delaware where defendant's offices and records were upon the ground among others that the documents as a result of the investigation were in Chicago, that there was no office of the Anti-Trust Division in Wilmington, Delaware, and that the entire personnel of the Chicago office would have to be transferred to Delaware (if the case were transferred). It appears from the affidavits and the records that at least in Case No. 55–C–110 all documents that the Government is relying upon are phys-

ically in Chicago. At the time of the oral argument Mr. Jinkinson stated in response to a question by the Court that if the case were tried in Milwaukee, he would have with him two or three assistants from his Chicago office in addition to a stenographer. It would thus appear to the Court in the absence of Mr. Jinkinson's assertion to the contrary that it would be more convenient for the Government if the case were tried in Chicago. It certainly would be less expensive than bringing four or five people from the Chicago office to Milwaukee and maintaining them here. However, the Court cannot question Mr. Jinkinson's assertion that it would be more convenient for the Government to have the cases in Milwaukee, and, therefore, will accept that assertion as made regardless of how illogical it would seem and regardless of the lack of facts to support that conclusion. At least, it certainly cannot be said to be overwhelmingly more convenient for the Government in Milwaukee away from its office than in Chicago.

So far as the defendants in Case No. 55-C-110 are concerned, there can be no question on the record before the Court but what the trial of the case in Chicago would be overwhelmingly less inconvenient for them than a trial in Milwaukee as well as much less expensive. For that reason the Court is of the opinion that the greater convenience of the parties would be served by transferring the case to Chicago.

As to Case No. 55-C-115 and insofar as it relates to the defendants, American Linen Supply Company, Steiner and Mayer, the same observations should be made.

As to the additional defendants, Crown Zellerbach Corporation and Wayne Brown, it appears that they have no office in Wisconsin, that they have a sales office in Chicago and that personnel from that company often perform duties for that company in Chicago.

As to the convenience of the parties, officers and employees of that defendant, notwithstanding the fact that there are eighty-five minute trains between Chicago and Milwaukee, persons coming by rail from any place excepting the small territory of the State of Wisconsin and the northern peninsula of Michigan would have to change trains in Chicago often changing stations. Time must be allowed to change stations where that is necessary, to make connections in the event a train coming into Chicago is late, and it is perfectly apparent that persons coming by rail excepting from Wisconsin and the northern peninsula of Michigan will be required to spend at least an extra half day in travel time each way in coming to Milwaukee instead of Chicago. While there are many places from which a witness or party could make direct air connections to Milwaukee, there are many fewer than where direct air connections can be obtained to Chicago. In situations where a change of planes is necessary in Chicago, there must again be allowed sufficient time to make the connection in the event of a plane being late.

It is the Court's opinion that as to that case the asserted convenience of the Government in having it in Milwaukee instead of Chicago is more than outweighed by the inconvenience to all defendants.

The second test laid down is the convenience of witnesses. As before pointed out, there is no showing in the affidavit of Mr. Jinkinson as to how many witnesses the Government intends to call from the state of Wisconsin or elsewhere. The number and location called before the Grand Jury can hardly be called a criteria as that was upon a criminal matter. Again, it is noted that the Grand Jury failed to indict. While the motion papers do not go into the question, one must assume that the principal witnesses called before the Grand Jury were called by the Government, and, therefore, that its list would not cover the defense witnesses called by the parties in both actions. It is the Court's opinion that the overwhelming conven-

ience of witnesses would be served by transferring the cases to Chicago.

■■ The third test set forth in the statute and in the Dairy Industries Supply Ass'n case is the interest of justice. In Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 7 Cir., 220 F.2d 299, 203 decided in 1955, the court states this concerning the consideration of "the interest of justice":

"The third test under the statute is 'in the interest of justice'. The phrase connotes conditions which are in furtherance of the administration of justice. It has been held that the phrase should be given paramount consideration. Greve v. Gibraltar Enterprises, Inc., D.C., 85 F.Supp. 410, 413. Both the interest of the parties to the lawsuit as well as society in general should be considered. United States v. National City Lines, Inc., D.C., 7 F.R.D. 393, 397, 402. In the interest of justice there should be considered the relative ease of access to sources of proofs; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; and the state of the court calendar both in the District where the case is pending, and in the District to which it is sought to have the case transferred."

■ There can be no real question concerning the relative ease of access to sources of proofs. All of the records before the Grand Jury are now in Chicago for the convenience of Government counsel in studying them. The documents of the defendants in Civil Action No. 55–C–110 are in Chicago or more readily available there. In Case No. 55–C–115, it would be relatively easy for the parties to have access to the sources of proof in Chicago because defendant, American Linen Supply Company, and two individual defendants have their offices there, and defendant, Crown Zel-

lerbach Corporation, has an office there. The sources of proofs as to the defendant, Crown Zellerbach Corporation, would no doubt be more convenient for it in Chicago than in Milwaukee.

Compulsory process for the attendance of unwilling witnesses would probably be equally available in either Chicago or Milwaukee.

The cost of obtaining the attendance of willing witnesses would be vastly less in Chicago than in Milwaukee. There is less travel expense and less time away from their work. What has been said above about the convenience of the parties and witnesses is equally applicable to the cost of obtaining the attendance of willing witnesses.

The criteria of the possibility of obtaining a view of the premises is probably not applicable here, at least no showing has been made in that respect.

This leaves the only other consideration on the question of the interest of justice the court calendars both in the district where the case is pending and in the district to which it is sought to have the case transferred. The Northern District of Illinois is one of the busiest districts in the United States, but approximately two years ago two additional judges were added which considerably reduced the work load per judge. It is true that the Congress also acted to relieve the situation in Wisconsin which had become the busiest single judge court in the United States. While there are now two judges in this district, it will not be until next summer that the court room facilities for the second judge will have been made available. Until that time the two judges will have to share the one court room. Because of this lack of physical facilities, it will be some considerable time until the heavy backlog of cases is disposed of.

Defendants' motions in each case are granted. Defendants' counsel in each case will prepare an order in accord with this decision, submitting it to plaintiff's counsel for approval as to form only.