**AMERITECH MOBILE COMMUNICATIONS, INC., a Delaware corporation, Plaintiff,**

v.

**CELLULAR COMMUNICATIONS CORPORATION, a Michigan corporation, Radio Tom Co., a Michigan corporation, and Thomas Parks, Defendants.**

No. 86 C 1238.

United States District Court, N.D. Illinois, E.D.

June 29, 1987.

Kenneth J. Jurek, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Peter J. Berman, Ltd., Howard M. Rubin, Chicago, Ill., Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

In this diversity contract action, plaintiff Ameritech Mobile Communications, Inc. ("Ameritech") alleges that defendants Cellular Communications Corp. ("Cellcom"), Radio Tom Co. ("Radio Tom") and Thomas Parks breached their agreements to purchase mobile telephone equipment from Ameritech. Ameritech seeks recovery from Cellcom for breach of contract, and from Radio Tom and Parks on the grounds that Parks is the "alter ego" of these two corporations, and he has not kept the two corporations as separate identities. The parties are before the court on defendants' motion to dismiss the action for lack of jurisdiction and venue, or to transfer the action pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the court denies defendants' motion to dismiss or transfer.

### Factual Allegations

Ameritech alleges that, in September of 1984, Ameritech and Radio Tom entered into an Authorized Sales Agent Agreement (the "RT Agreement") whereby Radio Tom would act as Ameritech's sales agent for

its cellular mobile telephone services. This agreement was the culmination of mutual negotiations between Radio Tom and Ameritech, some of which occurred at Ameritech's offices in Cook County, Illinois (Compl. ¶ 4).

In November of 1984, Parks, the sole owner of Radio Tom, incorporated Cellcom and transferred all of Radio Tom's mobile telephone business to it. By mutual agreement, the RT contract was terminated, and a new agreement between Ameritech and Cellcom was created ("the AC Agreement"). The provisions of the new agreement were subject to the same terms and conditions as the agreement between Radio Tom and Ameritech.

Cellcom purchased 120 units of cellular mobile telephones from Ameritech in 1985, and Ameritech shipped these phones in accordance with the AC agreement. Ameritech alleges that Cellular has breached its agreements with Ameritech by failing and refusing to pay for the telephones shipped subsequent to March 14, 1985.

Based on these facts, Ameritech filed a three count complaint. Counts I and II are against Cellcom only, alleging a breach of contract and seeking recovery for an account stated. Count III is against all three defendants, alleging that Radio Tom and Parks should be held liable for Cellcom's breach of the AC Agreement because proper separations between the corporate and financial affairs of the three defendants have not been maintained. Specifically, Ameritech alleges that the finances of Radio Tom and Cellcom have been commingled to defraud creditors; and that Parks has substantially depleted the assets of Cellcom. It asserts that, "Cellcom and Radio Tom are the mere instrumentalities and alter ego of Thomas Parks who has defrauded Ameritech by hiding behind the veil of the corporate defendants' allegedly separate existence." (Complaint ¶ 15).

## Personal Jurisdiction

Ameritech has the burden of providing sufficient evidence to establish a *prima facie* case of personal jurisdiction. For the purposes of this motion, the allegations of the complaint are accepted as true unless controverted by defendants' affidavits; and the court must resolve all conflicts in affidavits in Ameritech's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987). *See also O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971).

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if a court of the state in which it sits could exercise such jurisdiction. *Turnock*, 816 F.2d at 334; *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 569 (7th Cir.1986). A non-resident may be sued in Illinois if "(1) he performs one of the acts enumerated in the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 2–209,[1] and (2) the minimum contacts required by due process have been met." *Turnock, supra. See also Young*, 790 F.2d at 569.

Ameritech asserts that this court may exercise jurisdiction over all three defendants pursuant to ch. 110, § 2–209(a)(1), which permits jurisdiction over defendants for claims arising from their "transaction of business" in Illinois. Under 2–209(a)(1), a single act of a defendant or his agent may be sufficient to find a transaction of business in Illinois, so long as this act forms the basis of the plaintiff's claim. *John Walker and Sons, Ltd. v. DeMert &*

---

**1.** The Illinois long-arm statute provides in pertinent part:

    (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

    (1) The transaction of any business within this State;

    (2) The commission of a tortious act within this State;

    (3) The ownership, use, or possession of any real estate situated in this State;

    (4) Contracting to insure any person, property or risk located within this State at the time of contracting; ....

    (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based on this Section.

*Dougherty, Inc.*, 821 F.2d 399, 402, 403 (7th Cir.1987). *Financial Management Services, Inc. v. Sibilsky and Sibilsky, Inc.*, 130 Ill.App.3d 826, 833, 86 Ill.Dec. 100, 106, 474 N.E.2d 1297, 1303 (1985). A plaintiff asserting jurisdiction must identify the defendant's contacts in Illinois, and demonstrate that his claim "arises from" these contacts. *First National Bank of Chicago v. Boelcskevy*, 126 Ill.App.3d 271, 273–74, 81 Ill.Dec. 380, 383, 466 N.E.2d 1182, 1185 (1984). "While the term 'arising from' is liberally construed by the Illinois courts, the contacts must still bear some relation to the cause of action; '[t]he minimum relationship required is that the plaintiff's suit be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the Illinois courts.'" *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir. 1986), *citing Huffman v. Inland Oil & Transport Co.*, 98 Ill.App.3d 1010, 1016, 45 Ill.Dec. 306, 311, 424 N.E.2d 1209, 1214 (1981). *See also John Walker and Sons*, 821 F.2d at 403.

■ The record in the present case establishes that a significant portion of the parties' commercial dealings centered around Cellcom's activities in Illinois. Parks came to Chicago to discuss a Cellcom agency agreement in late 1984 (Syrios Aff. ¶ 6). The parties agreed to substitute this agreement for the RT agreement. Although Cellcom signed the agreement in Michigan, the agreement was governed by Illinois law and contemplated substantial commercial dealings with Ameritech in Illinois. The orders at issue were placed in Illinois, with terms of delivery F.O.B. Ameritech's warehouse facility in Illinois. Ameritech shipped the merchandise and mailed its invoices to Cellcom in Michigan, and the agreement required Cellcom to tender its payment to Ameritech's offices in Illinois. Under these circumstances, Cellcom's contacts with Illinois satisfy the standards for transaction of business under the Illinois long-arm statute. *Empress International, Ltd. v. Riverside Seafoods*, 112 Ill.App.3d 149, 67 Ill.Dec. 891, 445 N.E.2d 371 (1983) (upholding personal jurisdiction in buyer-seller relationship where the purchaser's Illinois contacts were less substantial than Cellcom's in the present case). *See John Walker and Sons, supra. Cf. Afram Export Corp. v. Metallurgiki Hallyps, S.A.*, 772 F.2d 1358 (7th Cir.1985) (finding jurisdiction under Wisconsin statute under similar circumstances).[2]

■ The court also finds that its exercise of jurisdiction over Cellcom does not offend the due process clause. *See Afram Export*, 772 F.2d at 1362–64; *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1200–05 (7th Cir.1985). The due process clause permits the exercise of jurisdiction over a nonresident who purposefully establishes "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[The] minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Asahi Metal Industry Co. v. Superior Court of California*, —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987), *citing Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

The court finds that these standards have clearly been met in the present case. Cellcom is a Michigan agent of an Illinois corporation. Its principal, Thomas Parks,

2. Cellcom argues that its agency agreement contemplated performance in Michigan, not Illinois. The court disagrees with this characterization. The contract involved a buyer-seller arrangement whereby Cellcom would order mobile telephones from Illinois, Ameritech would ship the merchandise from Illinois, and Cellcom would tender payment for the merchandise in Illinois. The agency aspect of the contract provided that Cellcom would sell these telephones in Michigan. The present complaint concerns an alleged breach of the buyer-seller relationship (centered in Illinois), not the principal-agent relationship. Thus, the fact that Cellcom resold the telephones at retail in Michigan does not alter the court's conclusion that § 2–209(a)(1) authorizes personal jurisdiction over Ameritech's claim that Cellcom failed to pay for equipment it ordered from Ameritech in Illinois.

entered Illinois to discuss the agency relationship, and Cellcom subsequently ordered goods from Ameritech pursuant to its agency agreement. An agent who enters an agreement with an Illinois principal that is governed by Illinois law and requires substantial performance in Illinois should not be surprised when the principal institutes litigation in Illinois based on a breach of the agency agreement. Cellcom's Illinois contacts provide ample support for this court's exercise of jurisdiction over it. *See generally John Walker and Sons; Afram Export; Empress International, Ltd. v. Riverside Seafoods, Inc.,* 112 Ill.App.3d 149, 67 Ill.Dec. 891, 445 N.E.2d 371 (1983). Accordingly, the court denies Cellcom's motion to dismiss for lack of personal jurisdiction.

Count three of the amended complaint alleges that Radio Tom and Parks should be held liable for Cellcom's breach because Parks has not maintained the appropriate corporate formalities between Radio Tom and Cellcom, and between these corporations and himself. If all three parties are the same for purposes of Count III, then Cellcom's Illinois activities (including activities by defendants on Cellcom's behalf) can be considered when determining whether the court should assert jurisdiction over the other two defendants. *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 350 (N.D.Ill.1984). *Cf. Bally Export Corp. v. Balicar,* 804 F.2d 398, 405 (7th Cir.1986).

Parks and Radio Tom argue that, before the court relies upon these contacts to assert jurisdiction over them, it must make a preliminary determination that Ameritech has pleaded a valid "alter ego" claim under Illinois law. *Club Assistance,* 594 F.Supp. at 350; *Zeunert v. Quail Ridge Partnership,* 102 Ill.App.3d 603, 608, 58 Ill.Dec. 242, 245, 403 N.E.2d 184, 187 (1981). The doctrine of piercing the corporate veil applies to affiliated corporations owned by the same individual as well as parent/subsidiary corporations. *Baker v. Caravan Moving Corp.,* 561 F.Supp. 337, 340 (N.D.Ill.1983). In *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 570 (7th Cir.1984), the court listed four basic factors considered by the Illinois courts when determining whether the separate corporate existence of a defendant should be disregarded: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." (citing *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94 (1981)). *See also Pro-Line Corp. v. Midwest Hair Goods Co.,* 600 F.Supp. 770, 771 (N.D.Ill.1985).

■ Count III contains the following allegations with respect to the interrelationship between the three defendants:

11. That on information and belief Cellcom was inadequately capitalized at formation, and since its formation it has operated with little or no capital, owned little or no real or personal property and had no means independent of Radio Tom and Thomas Parks of meeting its obligations to creditors, including Ameritech.

12. That on information and belief, proper separations between the corporate and financial affairs of Radio Tom and Cellcom have not been maintained. The Defendants did not maintain separate finances but commingled their funds and shifted funds among themselves at will, and used such shifting of funds as a means of defrauding creditors, including Ameritech.

13. That on information and belief, substantially all of the equipment shipped to Cellcom by Ameritech has been sold, the proceeds used to pay start-up expenses and make preferential payments to affiliated creditors of Cellcom, including Radio Tom and Thomas Parks, and that the assets of Cellcom have been substantially depleted and its operations essentially ended.

14. That on information and belief, Thomas Parks, as sole stockholder,

Chairman, President and Chief Executive officer of each of Cellcom and Radio Tom, has been fully cognizant of the foregoing and has personally benefitted therefrom.

15. There is such unity of interest and ownership among the defendants that their individuality, if ever existing, has ceased to exist. Cellcom and Radio Tom are the mere instrumentalities and alter ego of Thomas Parks who has defrauded Ameritech by hiding behind the veil of the corporate Defendants' allegedly separate existence.

These allegations contain elements of all four factors considered by the Illinois courts when determining the sufficiency of an "alter ego" claim. Unlike the allegations in *Club Assistance*, the court finds that Ameritech's complaint is "minimally viable," and the contacts of Cellcom may be considered when determining whether the court may exercise personal jurisdiction over Parks and Radio Tom.[3]

Even if the contacts of Cellcom were not considered in determining the propriety of exercising personal jurisdiction, however, the court finds that the acts of Parks and Radio Tom are also sufficient to justify the requirements of the Illinois long arm statute and the due process clause. As stated earlier, a cause of action arises from a defendant's transaction of business in Illinois if it "lies in the wake" of defendant's business contacts in Illinois. *John Walker and Sons*, 821 F.2d at 403. Parks came to Ameritech's offices twice—once on behalf of Radio Tom and once on behalf of Cellcom.[4] (*See* Syrios Aff. ¶ 6.) Parks and Radio Tom requested the transfer of the contract from Radio Tom and Cellcom, which was ultimately accepted by Ameritech in Illinois. Under these circumstanc-

---

**3.** The court's review of these allegations is limited to a determination they are "minimally viable" to support the exercise of personal jurisdiction. The purpose of this review is " 'to insure that acts or omissions which form the basis of a cause of action that is patently without merit will not serve to confer jurisdiction.' " *Club Assistance*, 594 F.Supp. at 350, citing *Zeunert*, 102 Ill.App.3d at 608, 58 Ill.Dec. at 245, 430 N.E.2d at 187. It should not entail an extensive inquiry into the substantive merits of Ameritech's claim. If Parks and Radio Tom desire to challenge the *substance* of the complaint, they may do so through a motion for summary judgment after discovery is completed.

**4.** Parks also objects to the court's use of his contacts in Illinois as a corporate officer to justify suit against him in his individual capacity. He argues that jurisdiction cannot be predicated on acts performed by an agent, citing the "fiduciary shield" doctrine, which provides that the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person. *Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.*, 130 Ill.App.3d 826, 86 Ill.Dec. 100, 474 N.E.2d 1297 (1985); *Hurletron Whittier, Inc. v. Barda*, 82 Ill.App.3d 443, 37 Ill.Dec. 838, 402 N.E.2d 840 (1980).

In *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.*, 558 F.Supp. 932 (N.D.Ill.1982), this court discussed the application of the fiduciary shield doctrine in a suit seeking to hold a corporate officer liable for acts performed as an agent of the corporation:

a close examination of Illinois courts in which reference to this doctrine is made reveals that Illinois courts have not applied this doctrine with full force, but have instead relied upon traditional minimum contacts analysis as the basis for decision.... Even if the doctrine were fully adopted by Illinois courts, it is an equitable doctrine which should not be followed mechanically, but instead must be applied with a sound exercise of discretion.... Courts applying the doctrine have held that it should not equitably be applied in cases where plaintiff seeks to pierce the corporate veil by alleging that the corporation was a mere shell utilized by the individual defendant for his personal benefit. 558 F.Supp. at 935–36. *See also Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052, 1063 n. 22 (4th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984) ("In all of these Illinois cases, ... the real basis of the decisions, is not the bare language of the doctrine but the absence of any contacts of the individual agent in Illinois with the alleged [wrongdoings]."); *Chancellor v. Lawrence*, 501 F.Supp. 997, 1005 (N.D.Ill.1986); *First National Bank of Chicago v. Boelcskevy*, 126 Ill.App.3d 271, 275–76, 81 Ill.Dec. 380, 384, 466 N.E.2d 1182, 1186 (1984). In the present case, the court finds that the fiduciary shield doctrine does not protect Parks from suit in Illinois because this cause of action flows directly from his Illinois contacts, which secured the agency contracts for his companies, Cellcom and Radio Tom. *See John A. Walker and Sons*, 821 F.2d at 404–405 (finding personal jurisdiction over corporate agent for acts performed on behalf of the corporation).

es, the court finds that Ameritech's claims against these defendants flow from their transaction of business in Illinois.

■ Given their Illinois contacts, the court also finds that exercise of personal jurisdiction over Parks and Radio Tom is consistent with the requirements of the due process clause. Recently, in *John A. Walker and Sons*, the Seventh Circuit explained,

The issue becomes whether [Radio Tom] and [Thomas Parks] had sufficient contacts with Illinois to satisfy the requirements of due process so as not to offend 'traditional notions of fair play and substantial justice'.... 'Whether sufficient minimum contacts exist cannot be answered by applying a formula or rule of thumb, by ascertaining what is fair and reasonable in the circumstances of the particular situation.... In the application of this flexible test, the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum.'

821 F.2d at 403–404 (citations omitted). In the present case, Parks and Radio Tom clearly performed sufficient acts to satisfy the due process clause. Parks solicited an agency contract on behalf of Radio Tom in Illinois. Radio Tom maintained these contacts with Ameritech by ordering goods from Illinois and later seeking to transfer its contractual responsibilities to Cellcom. The fact that all this activity did not occur in Illinois does not preclude the exercise of personal jurisdiction. As the Supreme Court noted in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985),

[W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

(citations omitted). Parks and Radio Tom entered an agency agreement with Ameritech, an Illinois corporation, and later achieved the transfer of this agreement to Cellcom, an affiliated corporation. Given their Illinois contacts, exercise of personal jurisdiction over them for breach of the agency agreement is consistent with the due process clause.

### Improper Venue

■ The defendants also move to dismiss for improper venue pursuant to 28 U.S.C. § 1406(a), which provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought.

Venue in diversity actions is governed by 28 U.S.C. § 1391(a), which permits a plaintiff to bring an action in the district where all the plaintiffs reside, all the defendants reside, or where the claim arose. A corporate plaintiff "resides" only in the state of its incorporation. *NTN Bearing Corp. v. Charles E. Scott, Inc.*, 557 F.Supp. 1273, 1277 (N.D.Ill.1983). In the present case, venue is proper in Delaware (state of Ameritech's incorporation), Michigan (where defendants reside) or "where the claim arose." Ameritech argues that its claims against Parks, Radio Tom and Cellcom arose in Illinois; while defendants argue that Michigan bears a much closer connection to this lawsuit.

■ The court agrees with Ameritech that this litigation bears a greater relationship to Illinois than Michigan. This litigation stems from the alleged breach of contract between an Illinois-based company and one of its agents, who happens to be located in Michigan. The litigation concerns the agent's failure to pay for equipment ordered and shipped from Illinois. The most logical situs for the occurrence of

this claim is Illinois, where the breach occurred when Cellcom refused to pay.[5]

Parks and Radio Tom assert that, even if venue as to the claims against Cellcom is proper, it is still improper as to them because the alter ego claim against them arose in Michigan, not Illinois. The court disagrees. Ameritech's claim against them exists because they allegedly operated Cellcom as an "alter ego" of themselves. The fact that some evidence of this claim is located in Michigan does not alter this court's conclusion that the basic allegations in Ameritech's complaint relate to claims which arose here as a result of Cellcom's failure to abide by its agreement with Ameritech. Accordingly, the court denies defendants' motion to dismiss for improper venue.

### Motion To Transfer

Section 1404(a) provides that a court may transfer a civil action to another district where it might have been brought. It is clear from the pleadings that venue in this action also would have been proper in Michigan, where all the defendants reside. The decision to transfer is within the district court's discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). In exercising its discretion, the district court must consider, in light of all the circumstances of the case, the three factors specifically mentioned in Section 1404(a): convenience of the parties, convenience of the witnesses, and the interests of justice. *Id.; Butterick v. Will*, 316 F.2d 111, 112–13 (7th Cir.1963); *Chicago, Rock Island and Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir.), *cert. denied*, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955); *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). The court must bear in mind that the plaintiff is permitted to choose any proper forum and the plaintiff's choice should not be lightly set aside. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946); *Dairy Industries Supply Association v. La Buy*, 207 F.2d 554, 558 (7th Cir.1953). Specifically, the plaintiff's choice of forum should not be disturbed where transfer merely shifts rather than eliminates inconvenience to the parties. *Loran Robbins v. Labar Transportation Corp.*, No. 79 C 5228, slip op. at 4 (N.D.Ill. February 26, 1981); *Blumenthal v. Management Assistance, Inc.*, 480 F.Supp. 470, 474 (N.D.Ill.1979).

The movant in a motion to transfer has the burden of proving that the balance weighs in favor of the proposed transferee district. *Coffey*, 796 F.2d at 219–20; *Illinois Tool Works v. Sweetheart Plastics, Inc.*, 436 F.2d 1180, 1188 n. 19 (7th Cir.), *cert. denied*, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971); *Bodine's Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279 (N.D.Ill.1980); *Cunningham*, 477 F.Supp. at 634. After analyzing all the materials filed in this case, the court finds that defendants have failed to satisfy their burden of demonstrating that this action should be transferred to Michigan.

First, Ameritech maintains its business office in this district, and its records concerning its contracts with Radio Tom, Cellcom and Parks are located here. Transfer of this action would therefore merely shift, rather than decrease, the inconvenience of the parties in this case. Second, both Ameritech and defendants assert that they will call witnesses who will be inconvenienced by having to testify at a trial conducted out-of-state; the inconvenience to potential witnesses therefore appears substantially equal. Third, Illinois has an interest in litigating a lawsuit which is governed by Illinois law, and which concerns damage to a resident of Illinois. Accordingly, the court finds that defendants have failed to meet their burden of proving that the proposed balance weighs strongly in favor of a transfer, and denies the motion to transfer this action to Michigan pursuant to Section 1404(a).

---

5. The fact that Cellcom may have resold these products in Michigan bears no significance to the inquiry into proper venue. Ameritech does not allege that the defendants violated the provisions of the contract relating to retail sale of the mobile phones in Michigan; its claim is based on the provisions of the contract regarding the agent's purchase of the telephones from Ameritech in Illinois, and its contractual duty to pay Ameritech for these goods in Illinois.

## Conclusion

For the reasons set forth above, the court denies defendants' motion to dismiss for lack of personal jurisdiction and improper venue, and denies defendants' motion to transfer pursuant to Section 1404(a).