Alfred SAYLOR, Mary L. Saylor, and Julie M. Saylor, a minor, by her mother and next friend, Mary L. Saylor, Plaintiffs–Appellants,

v.

Walter M. DYNIEWSKI, Sr., Defendant–Appellee.

No. 87–1033.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1987.

Decided Jan. 6, 1988.

Larry Karchmar, Larry Karchmar, Ltd., Chicago, Ill., for plaintiffs-appellants.

Frank C. Stevens, Taylor, Miller, Sprowl, Hoffnagle & Merletti, Chicago, Ill., for defendant-appellee.

Before CUDAHY, POSNER, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The Saylors, who reside in Illinois, brought this diversity action in the District Court for the Northern District of Illinois against Walter Dyniewski, an Indiana resident, for injuries they sustained when Dyniewski's and the Saylors' cars collided at an intersection near Valparaiso, Indiana. The defendant moved to dismiss the suit for lack of personal jurisdiction. Plaintiffs, who were by then precluded from refiling their suit in Indiana where personal jurisdiction over defendant would have been assured, opposed the dismissal motion and sought to have the case transferred to an Indiana district court. The Illinois district court granted the motion to dismiss and denied the transfer request.

Construing all disputed facts that bear on personal jurisdiction in the light most favorable to the plaintiffs, we conclude that the Illinois district court lacked personal jurisdiction over the defendant. We also find that the district court did not abuse its discretion in refusing to transfer the case to Indiana. We therefore affirm.

## I.

On June 11, 1984, Alfred Saylor and Walter Dyniewski were involved in an automobile accident near Valparaiso, Indiana. Saylor was a resident of Oak Lawn, Illinois; Dyniewski resided in Hebron, Indiana, and worked in Valparaiso. According to Alfred Saylor's affidavit, Dyniewski talked to Saylor at the scene of the accident, relating that he had been en route from "some type of business sales activities" in Illinois when the accident occurred. Dyniewski's affidavit offers a conflicting account of this conversation. According to Dyniewski, he told Saylor that he had been on the way home from work—at the manufacturing plant in Valparaiso where he had worked as a maintenance man for twenty-three years—when the accident occurred.

Alfred Saylor, together with his wife and daughter who were passengers at the time of the accident, initiated this action in the District Court for the Northern District of Illinois on April 21, 1986, seeking tort damages from Dyniewski. The suit was filed with less than two months remaining within the two-year limitation period provided by both the Illinois and Indiana statutes of limitations. Ill.Ann.Stat. ch. 110, para. 13–202 (Smith–Hurd 1984); Ind. Code Ann. § 34–1–2–2(1) (West 1983).

On May 6, 1986, Saylor's attorney mailed Dyniewski copies of the Complaint and Summons in the Illinois action. This mailing also included an "Acknowledgment of Receipt of Summons and Complaint" form and a notice explaining that Dyniewski was being served under Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure and that failure to return the acknowledgment form within twenty days could result in service by a United States marshall with costs charged to the recipient. Dyniewski never-

theless declined to return the acknowledgment form. On May 15th, Dyniewski's attorney notified the Saylors' attorney that Dyniewski would insist on personal service. Service was finally perfected by the United States marshal on June 23, 1986, almost two weeks past the deadline for filing a protective suit in Indiana against the possibility of dismissal for want of jurisdiction in Illinois.

On December 31, 1986, the Illinois district court dismissed the Saylors' suit for lack of personal jurisdiction and denied the Saylors' Motion for Transfer of Venue. The plaintiffs then brought this appeal.

## II.

Under Illinois law, the party seeking to establish personal jurisdiction must make out a prima facie case. *Kutner v. DeMassa*, 96 Ill.App.3d 243, 247–48, 51 Ill.Dec. 723, 727, 421 N.E.2d 231, 235 (1981); *Wessel Co., Inc. v. Yoffee & Beitman Management Corp.*, 457 F.Supp. 939, 940 (N.D.Ill. 1978). In deciding a motion to dismiss, the court must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction. *Delux Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209 (7th Cir.1984). We therefore accept Alfred Saylor's representation that, to the best of his "knowledge and recollection," Dyniewski spoke to him immediately after the accident and alluded to having engaged in "business sales activities" in Illinois earlier that day.

Saylor does not claim that Dyniewski's contacts with the state were extensive enough for him to be subject generally to the in personam jurisdiction of Illinois courts. *See Lindley v. St. Louis–San Francisco Ry.*, 407 F.2d 639, 640–41 (7th Cir.1968); *Braband v. Beech Aircraft Corp.*, 51 Ill.App.3d 296, 298, 9 Ill.Dec. 684, 686, 367 N.E.2d 118, 120 (1977), *aff'd*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979). Instead, Saylor invokes Illinois' long arm statute to establish personal jurisdiction over the specific claims at issue here. To show that the Illinois courts have long arm jurisdiction, a

plaintiff must meet the requirements of both the state's long arm statute and the due process clause of the fourteenth amendment. The Illinois long arm statute, though originally viewed as a restatement of the federal minimum contacts standard, *e.g., Nelson v. Miller,* 11 Ill.2d 378, 389–90, 143 N.E.2d 673, 679–80 (1957), has more recently been held to require separate analysis. *E.g., Small v. Sheba Investors, Inc.,* 811 F.2d 1163, 1165 (7th Cir.1987); *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981); *Green v. Advance Ross Elec. Corp.,* 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 661–62, 427 N.E.2d 1203, 1207–08 (1981). We therefore consider the two standards separately.

■ The Illinois long arm statute lists a series of acts that provide a basis for jurisdiction when conducted within the state, but restricts the state's jurisdiction to "causes of action arising from" those enumerated acts. Ill.Ann.Stat. ch. 110, para. 2–209(a), (c) (Smith–Hurd 1983).[1] Plaintiffs contend that Dyniewski's "business sales activities" constituted "[t]he transaction of ... business" in Illinois within the meaning of section 17(1)(a) of the long arm statute. Accepting the truth of Alfred Saylor's affidavit, as we must, Dyniewski's activities could, in fact, qualify as the transaction of business. *E.g., Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117, 120 (N.D.Ill. 1980).

The plaintiffs' jurisdictional argument flounders, however, with the assertion that the tort claim arose from Dyniewski's supposed business in Illinois. Saylor correctly points out that a plaintiff's cause of action need not be strictly contractual to arise from the transaction of business in Illinois. *See In re Oil Spill by Amoco Cadiz,* 699 F.2d 909 (7th Cir.1983) (claim for quasi-con-

tractual indemnity); *Dalton v. Blanford,* 67 Ill.App.3d 91, 97, 23 Ill.Dec. 39, 43, 383 N.E.2d 806, 810 (1978) (products liability claim involving product that defendant supplied to Illinois seller). However, Saylor has failed to identify any case in which an injury incurred outside Illinois was held to have "arisen from" an unrelated transaction within Illinois. To the contrary, the case law plainly establishes that claims can only "arise from" transactions if some connection exists between the nature of the claim and the nature of the transaction. *Compare Amoco Cadiz,* 699 F.2d at 915 (indemnity claim against ship builder arose from negotiation of ship purchase in Illinois); *Ragold,* 506 F.Supp. at 120 (deceptive advertising claim arose from advertising within Illinois) *and Dalton,* 67 Ill. App.3d at 69, 23 Ill.Dec. at 43, 383 N.E.2d at 810 (1978) (product liability claim arose from out-of-state manufacturer's sale of saddles to Illinois seller) *with Lindley,* 407 F.2d at 641 (claim for personal injury suffered in Missouri did not arise from railroad's transaction of business in Illinois); *Hindu Incense v. Meadows,* 439 F.Supp. 844, 846 (N.D.Ill.1977) (trademark infringement in Michigan did not arise from purchase of product bearing protected trademark in Illinois) *and Volkswagen Ins. Co. v. Whittington,* 58 Ill.App.3d 621, 624–25, 16 Ill.Dec. 179, 181–82, 374 N.E.2d 954, 956–57 (1978) (use of Illinois highway by truck engaged in commerce between Kentucky and Wisconsin does not give Illinois court jurisdiction over tort claims arising from accident in Indiana).

The *Volkswagen Insurance Co.* and *Lindley* cases, in which Illinois courts were found to lack in personam jurisdiction over defendants charged with committing torts outside the state, are particularly instructive. In *Volkswagen Insurance Co.,* the Illinois Appellate Court held that Illinois'

---

**1.** The relevant statutory language states
    (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

    (1) The transaction of any business within this State; ....
    ....
    (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section. Ill.Ann.Stat. ch. 110, para. 2–209 (Smith–Hurd 1983).

long arm statute could not reach a Kentucky beer distributor whose truck collided with the plaintiff's car on an Indiana highway, despite the truck's use of Illinois roads during the same trip. Missing was the required "close relationship between a cause of action against a nonresident defendant and his jurisdictional activities.... Doing business in Illinois, *by itself,* [was] not a sufficient contact...." 58 Ill.App.3d at 64–65, 16 Ill.Dec. at 181–82, 374 N.E.2d at 956–57. In *Lindley,* this court held that a railroad's solicitation of freight and passenger business in Illinois (for lines lying entirely outside the state) did not subject it to Illinois' long arm jurisdiction for claims associated with an accident that had occurred in Missouri. 407 F.2d at 642. The railroad's contacts with Illinois in the *Lindley* case were, if anything, closer than Dyniewski's contacts in the present case. The railroad's alleged negligence at least resulted directly from the conduct of the business that its Illinois office existed to promote. Dyniewski's travel in Indiana apparently lacked even this connection to his alleged sales solicitation in Illinois. We conclude that the accident in Indiana did not arise from Dyniewski's actions in Illinois within the meaning of section 17(1)(c) of the long arm statute.

In view of the plaintiffs' failure to meet the requirements for personal jurisdiction under the Illinois statute, we can affirm the district court's jurisdictional ruling without considering whether Dyniewski had the constitutionally required "minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). A brief discussion of the due process standard is still in order, however, since Saylors' argument for transferring the case turns in part on how badly the plaintiffs erred in failing to recognize that Illinois lacked personal jurisdiction.

■ Plaintiffs' only argument under the constitutional test for personal jurisdiction, like the argument under the long arm statute, goes to specific jurisdiction over the claim rather than general jurisdiction over the defendant. The record contains no hint that Dyniewski's contacts with Illinois were extensive enough to subject him generally to the jurisdiction of the Illinois courts. *See Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466 U.S. 408, 415 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed. 2d 404 (1984) (distinguishing general and specific forms of personal jurisdiction). Specific jurisdiction turns on a particularized assessment of the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The particularized holdings of prior cases, however, unequivocally preclude the assertion of personal jurisdiction in this case.

In *International Shoe,* the Supreme Court upheld Washington's assertion of personal jurisdiction over an out-of-state corporation that conducted "continuous and systematic" activities there. Jurisdiction, however, turned on the important proviso that the defendants' activities in Washington "g[a]ve rise to the liability sued upon." 326 U.S. at 317, 66 S.Ct. at 159. In *Lindley,* this court interpreted and applied this aspect of *International Shoe* to give content to the Illinois statutory requirement (then assumed to be congruent with the dictates of due process) that a cause of action "arise from" the defendant's forum jurisdictional activities.

The conclusion that Dyniewski lacked minimum contacts with Illinois is also compelled by the Supreme Court's emphasis in more recent cases on the foreseeability of a state's assertion of jurisdiction and voluntary acts by the defendant indicating assent to jurisdiction. *See, e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (knowledge that purchaser of car could travel to Oklahoma does not subject seller to personal jurisdiction of Oklahoma court in product liability suit); *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56

L.Ed.2d 132 (1978) (California lacks personal jurisdiction over New York defendant in custody dispute governed by New York custody agreement). The territorial strand of personal jurisdiction surely retains enough strength that the decision to conduct business in another state does not foreseeably subject the traveler to the personal jurisdiction of that state for claims arising from accidents beyond its boundaries.

### III.

■ Saylor also appeals the district court's dismissal of his motion to transfer the case to the Northern District of Indiana under 28 U.S.C. § 1406(a). This section permits a district court to transfer a case brought in the wrong division or district if such a transfer is found to serve "the interest of justice." The district court from which a transfer is sought need not have personal jurisdiction over the defendant to apply this section. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed. 2d 39 (1962); *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986). The decision whether to transfer, however, is entrusted to the discretion of the district court. We will overturn a district court's determination under section 1406(a) only on a showing of a " 'clear abuse of discretion.' " *Id.* (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 237, 102 S.Ct. 252, 256, 70 L.Ed.2d 419 (1981)).

■ Saylor has not shown that the district court abused its discretion in this case. As in *Cote,* "[e]lementary prudence" should have prompted plaintiffs' lawyer to file a protective suit in a forum where personal jurisdiction was assured. Rather than file such a protective suit, the Saylors, like the *Cote* plaintiffs, gambled their case on an extremely dubious theory of personal jurisdiction. *Id.* at 986; *see also Brown v. Grimm,* 624 F.2d 58, 59 (7th Cir.1980) (distinguishing mistake from "blatant disregard[ ] for the elementary principles of *in personam* jurisdiction").

The plaintiffs nevertheless argue that "the interest of justice" required the district court to transfer this case. Specifically, they blame their failure to file in Indiana before the statute of limitations elapsed on Dyniewski's failure to return the service acknowledgment form. But Dyniewski was not responsible for plaintiffs' jurisdictional error. Completion of the form would not, of course, have strengthened the plaintiffs' argument that Illinois had personal jurisdiction. *Geldermann & Co. v. Dussault,* 384 F.Supp. 566, 572 (N.D.Ill.1974); *Muffo v. Forsyth,* 37 Ill.App.3d 6, 9, 345 N.E.2d 149, 151 (1976). Nor can Dyniewski's actions be said to have lulled plaintiffs into ignoring the issue. Dyniewski's counsel notified Saylors' counsel that Dyniewski would not respond to mailed service on May 13, 1986, nearly a month before the Saylors were time barred from filing suit in Indiana. A timely return of the acknowledgment form would not have provided the plaintiffs with any earlier, or any more effective, an indication that personal jurisdiction was in doubt.

In the end, the Saylors' argument for transfer is governed by *Cote.* The Saylors' theory of personal jurisdiction is at least as implausible as the plaintiff's claim in *Cote* that letters and phone calls to a Wisconsin client brought a Michigan law firm within the reach of a Wisconsin district court. *Id.* at 984. We recognize the hardship that outright dismissal may cause the Saylors. Nevertheless, we cannot conclude that the district court abused its discretion in refusing to subordinate the interests of future defendants and the courts in competent choices of venue to the interests of the present plaintiffs in escaping the costs of their counsel's mistakes.

### IV.

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.