**YKK USA, INC., Plaintiff,**

v.

**Edward BARON, individually, and Hope Baron, individually, Defendants.**

**No. 97 C 0939.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1997.

Richard Warren Hillsberg, Lester Abram Ottenheimer, III, Kovitz, Shifrin & Waitzman, Buffalo Grove, IL, for Plaintiff.

Leo Feldman, Edward Stuart Margolis, Steven N. Malitz, Teller, Levit & Silvertrust, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, YKK USA, Inc., ("YKK"), has sued the defendants, Edward and Hope Baron, under state law. The defendants have moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2). For the following reasons, the motion is denied.

### I.

In a diversity action such as this one, federal courts in Illinois have personal jurisdiction over a non-resident party only if Illinois courts would have personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir.1997). The plaintiff has the burden of establishing the existence of personal jurisdiction. *Id.* at 1276. The following facts are from the complaint to the extent that the Barons' affidavit did not controvert them, *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987) (complaint allegations uncontroverted by defendant's affidavit must be accepted as true), and from the affidavit of Michael Weiss, Vice President of YKK.[1] Where the Barons controvert Mr. Weiss' statements, I resolve the dispute in favor of the plaintiff. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir.1988) (in resolving motion to dismiss complaint for lack of personal jurisdiction, court may consider affidavits and must resolve disputes in favor of plaintiff).

YKK is a foreign corporation, which maintains its principal place of business and is authorized to transact business in Illinois. E. Baron Industries, Inc. ("Baron Industries"), a New Jersey corporation, sells webbing, zippers, and thread to manufacturers and secondary users. Mr. Baron is the president, shareholder, and director of Baron Industries. Ms. Baron is an officer, shareholder, and director of Baron Industries. Both reside in New Jersey.

---

1. I reject YKK's argument that Mr. Weiss' affidavit should be stricken or disregarded. It sufficiently complies with Fed.R.Civ.P. 56(e).

For the past ten years, Baron Industries requested, paid for, and received goods supplied by YKK. For the past five years, the Barons have contacted YKK's Vice President, Michael Weiss, based in Illinois, by telephone and mail. During such communications, Mr. Weiss and the defendants discussed orders, payment arrangements, shipping instructions, and other issues related to the purchase and sale of YKK goods by and to Baron Industries. During the past eighteen months, the discussions have revolved around Baron Industries' having become significantly delinquent in paying YKK.[2] On November 26, 1996, YKK obtained a default judgment against Baron Industries in a Northern District of Illinois court for merchandise sold and delivered, but not paid for. *YKK USA Inc. v. Baron Indus., Inc.,* No. 96 C 5674.

In the instant case, YKK seeks to enforce this default judgment by piercing the corporate veil of Baron Industries and holding the plaintiffs, Baron Industries' officers and shareholders, liable for Baron Industries' obligations. The defendants have moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

## II.

YKK seeks to establish personal jurisdiction over the Barons on the basis of their business dealings with YKK in Illinois. The defendants contend, *inter alia,* that they are protected from the court's assertion of personal jurisdiction by the "fiduciary shield" doctrine. "To the extent the fiduciary shield doctrine does not apply, jurisdiction over [the Barons] may be proper on the basis of [the Baron Industries'] contacts with Illinois." *See Torco Oil Co. v. Innovative Thermal Corp.,* 730 F.Supp. 126, 127–28 (N.D.Ill.1989). Therefore, the first issue is whether Baron Industries' contacts with Illinois would support assertion of personal jurisdiction over it. *See id.*

To determine whether personal jurisdiction exists, the court must determine whether (1) the Illinois long-arm statute grants personal jurisdiction, and whether assertion of jurisdiction is consistent with (2) the United States and (3) the Illinois Constitutions. *RAR,* 107 F.3d at 1276. The Illinois long-arm statute provides that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c) (1992). "Because the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries—one state and one federal." *RAR,* 107 F.3d at 1276; *Allied Metal Co. v. Edgerton Metal Prods., Inc.,* 908 F.Supp. 576, 580–81 (N.D.Ill.1995).

The due process clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *RAR,* 107 F.3d at 1277 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). This standard varies depending on whether the state asserts "specific" or "general" jurisdiction. "Specific jurisdiction refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.' " *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)); *Allied Metal,* 908 F.Supp. at 580.[3]

In a "specific" jurisdiction case, the court must decide whether the defendant has " 'purposefully established minimum contacts within the forum [s]tate' and consider whether, by traditional standards, those contacts

---

**2.** The Barons affirm that all their dealings were with a YKK office in New Jersey, (Barons Aff. ¶ 17), thereby disputing Mr. Weiss' statement that they communicated with him in his Illinois office. At this juncture, all factual disputes must be resolved in favor of YKK. *Saylor, supra,* 836 F.2d at 342.

**3.** "General" jurisdiction refers to a party's "continuous and systematic general business contacts" with the forum state unrelated to the controversy. *RAR,* 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia,* 466 U.S. at 416, 104 S.Ct. at 1872–73). YKK "has never alleged that [Baron Industries] has such systematic contacts with Illinois," thereby waiving the "general" jurisdiction argument. *Id.*

would make personal jurisdiction reasonable and fair under the circumstances." *RAR*, 107 F.3d at 1277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985)). The focus is whether, given his contacts, the defendant "should reasonably anticipate being haled into court" in the forum state, because he "purposefully avail[ed himself] of the privilege of conducting activities there." *Id.* (quoting *Burger King*, 471 U.S. at 474–75, 105 S.Ct. at 2183).

■ In this case, YKK's Mr. Weiss has affirmed that over the past ten years, Baron Industries placed orders with the plaintiff in Illinois, YKK products were delivered from Illinois to Baron Industries in New Jersey, and Baron Industries failed to pay for some of the goods. (Weiss Aff. ¶¶ 1(d)–1(h).) The suit in which YKK won a default judgment grew out of Baron Industries' failure to pay for YKK's goods. YKK also alleges that, upon realizing that YKK was going to execute on its November 26, 1996 judgment, the Barons stripped Baron Industries of its assets on January 17, 1997 by entering into an assignment agreement with its creditors, leaving Baron Industries with assets insufficient to satisfy the judgment. (Compl.¶¶ 17, 19.[4]) I conclude that Baron Industries has "minimum contacts" with Illinois for the purposes of "specific" jurisdiction. *Dehmlow v. Austin Fireworks, Inc.*, No. 90 C 4666, 1996 WL 41494, at *4 (N.D.Ill. Feb.1, 1996) (relying on *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984), "specific" jurisdiction found where defendant was alleged intentionally to hide assets to avoid satisfying Illinois plaintiff's judgment); *Allied Metal*, 908 F.Supp. at 580 ("specific" jurisdiction found where defendant initiated nine separate orders of merchandise from Illinois plaintiff, goods were delivered from Illinois, and defendant failed to pay for them pursuant to agreement with plaintiff); *Autotech Controls Corp. v. K.J.*

*Elec. Corp.*, 256 Ill.App.3d 721, 195 Ill.Dec. 526, 530–31, 628 N.E.2d 990, 994–95 (1993) (federal due process requirements satisfied where defendant maintained contractual relationship with Illinois plaintiff through telephone and fax purchase orders); *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283–84 (7th Cir.1990) (ongoing telephone and mail business relationship, initiated by defendant, satisfies federal due process requirements).

"Once minimum contacts have been established, [the defendant] can only escape jurisdiction by making a 'compelling case' that forcing it to litigate in [Illinois] would violate traditional notions of fair play and substantial justice." *Logan Prod., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir.1996) (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85). The defendants have not sought to make such a case.

Illinois due process requires that personal jurisdiction "be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316, (1990). I conclude that assertion of personal jurisdiction would not offend Illinois due process. *Autotech Controls*, 195 Ill.Dec. at 531–32, 628 N.E.2d at 995–96 (Illinois due process requirements satisfied where defendant maintained contractual relationship with Illinois plaintiff through telephone and fax purchase orders); *Michael J. Neuman & Assocs. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 725 (7th Cir.1994) ("While a court must conduct an independent analysis of due process under Illinois law, it may look to federal due process law for guidance.") *Allied Metal, su-*

---

4. I rely on the complaint because the Barons did not controvert these allegations in their affidavit. *Turnock*, 816 F.2d at 333 (complaint allegations uncontroverted by defendant's affidavit must be accepted as true); *cf. ING (U.S.) Sec., Futures & Options, Inc. v. Bingham Inv. Fund, L.L.C.*, 934 F.Supp. 987, 988 (N.D.Ill.1996) (where defendant's affidavit directly denied complaint allega-

tions and plaintiff did not furnish own affidavit, court could not take complaint allegations as true). The Barons affirmed only that "no Assignment for the Benefit of Creditors of E. Baron Industries, · Inc. *took place in the State of Illinois.*" (Barons Aff. ¶¶ 18(a)–(h)) (emphasis added).

*pra,* 908 F.Supp. at 580. Since assertion of personal jurisdiction over Baron Industries would not offend federal and state law due process, the Illinois long-arm statute is satisfied. *See RAR,* 107 F.3d at 1276. Therefore, the Baron Industries' contacts with Illinois would support personal jurisdiction over the company.

### III.

■ The second issue is whether the "fiduciary shield" doctrine protects the defendants from the court's assertion of personal jurisdiction. Under the doctrine, if an individual's contacts with the forum state are acts performed in his or her representative capacity, personal jurisdiction based on these acts is improper. *ING (U.S.) Sec., Futures & Options* ,934 F.Supp. at 988; *Washburn v. Becker,* 186 Ill.App.3d 629, 134 Ill.Dec. 418, 420, 542 N.E.2d 764, 766, (1989). The premise of the doctrine is that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Washburn,* 134 Ill.Dec. at 420, 542 N.E.2d at 766 (quotation omitted).

■ There are, however, exceptions to the "fiduciary shield" doctrine. YKK relies on the "sham" or "alter ego" exception. This exception is applicable "where the plaintiff seeks to pierce the corporate veil by alleging that the corporation was a mere shell utilized by the individual defendant for his own personal benefit." *Torco Oil Co.,* 730 F.Supp. at 135–136 (quoting *Hyatt Int'l Corp. v. Inversiones Los Jabillos, C.A.,* 558 F.Supp. 932, 936 (N.D.Ill.1982)); *ING (U.S.) Sec., Futures & Options,* 934 F.Supp. at 988. If the "alter ego" exception is applicable, the corporation's contacts are attributed to the individual for the purposes of personal jurisdiction determination. *Torco Oil,* 730 F.Supp. at 136; *Ameritech Mobile Communications, Inc. v. Cellular Communications Corp.,* 664 F.Supp.

1175, 1179–80 (N.D.Ill.1987). The "alter ego" exception is similar to, but is less exacting than, the test for piercing the corporate veil, which is the theory of YKK's complaint. The exception is satisfied if the plaintiff makes a "minimally viable" showing that the corporation is a "sham." [5] *Torco Oil,* 730 F.Supp. at 136.

■ YKK alleges that, since its inception, Baron Industries operated with little or no real or personal property independent of those of the Barons; that Baron Industries never paid dividends; that Baron Industries did not observe the requisite corporate formalities, such as holding Board of Directors meetings; that the Barons used the funds of Baron Industries to pay their personal expenses, advanced interest-free loans to Baron Industries, and the corporation paid the defendants' debts; that, upon request, Baron Industries failed to produce corporate and financial records, and could not explain an adjustment of $259,940.00 in its profit-and-loss analysis; and that there is such a unity of interest and ownership between Baron Industries and the Barons that the former is a mere instrumentality and alter ego of the latter. (Compl.¶¶ 8–10, 13, 15, 20); [6] (Weiss Aff. ¶¶ 1(1)–(o).) YKK also alleges that, upon realizing that YKK was going to execute on its November 26, 1996 judgment, the Barons stripped Baron Industries of its assets on January 17, 1997 by entering into an assignment agreement with its creditors, leaving Baron Industries with nominal assets of approximately $16,200.00. (Compl.¶¶ 17, 19.) Since the YKK's judgment is $185,000.00, plus $185.00 in costs and applicable interest, (*id.* ¶¶ 5, 7), these assets will be insufficient to satisfy the judgment.

■ These allegations are sufficient to invoke the "alter ego" exception. *Torco Oil,* 730 F.Supp. at 137–39 (allegations of lack of corporate assets and indirect allegations of commingling of funds); *Ameritech Mobile Communications,* 664 F.Supp. at 1179–80 (al-

---

**5.** This showing is required to prevent a cause of action "patently without merit" from forming the basis of personal jurisdiction. *Ameritech Mobile Communications,* 664 F.Supp. at 1180 n. 3.

**6.** The Barons did not controvert these allegations in their affidavit. The Barons affirmed only that

"none of the acts alleged in Plaintiff's Complaint with regard to the relationship between the Affiants and E. Baron Industries, Inc. *occurred in the State of Illinois.*" (Barons Aff. ¶¶ 18(a)–(h)) (emphasis added).

legations of inadequate capitalization and commingling of funds); *Hyatt Int'l,* 558 F.Supp. at 936 (allegation that defendant corporation "never had any separate corporate existence, but has been used and exists as a mere instrumentality of [individual defendant] for the sole purpose of conducting his personal business."); *see also Northwestern Corp. v. Gabriel Mfg. Co.,* No. 95 C 2004, 1996 WL 732519, at *9 (N.D.Ill.Dec.18, 1996) (nonpayment of dividends, absence of corporate records, and injustice resulting from adhering to corporate fiction, among others, warrant piercing corporate veil).[7] Therefore, the Barons are not protected by the "fiduciary shield" doctrine and the Barons' contacts with Illinois on behalf of Baron Industries are attributable to them for the purposes of personal jurisdiction. Since I have already found Baron Industries' contacts to be sufficient to support personal jurisdiction, these contacts support personal jurisdiction over the defendants as individuals.

### Conclusion

The defendants' motion to dismiss for lack of personal jurisdiction is denied.

---

7. The Barons' primary argument against personal jurisdiction is that the acts demonstrating that Baron Industries is a "sham" corporation did not occur in Illinois. However, the location of these acts is irrelevant. For the purposes of federal and state due process requirements, the defendants' contacts with Illinois arise from the commercial relationship between YKK and Baron Industries. That relationship was the basis for the prior default judgment, whose enforcement is the reason for the instant action.